Hillsborough
No. 85-135

THE STATE OF NEW HAMPSHIRE

v.

CHARLES OROPALLO

July 17, 1986

*Stephen E. Merrill*, attorney general (*Bradford W. Kuster*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

KING, C. J.  The defendant was indicted for incest in violation of RSA 639:2 and for two counts of aggravated felonious sexual assault in violation of RSA 632-A:2, III and IV (Supp. 1983). A jury trial resulted in convictions on all three charges. The defendant challenges two rulings of the Trial Court (*Goode,* J.) pertaining to admission of evidence of the defendant's previous violent conduct and exclusion of expert testimony. We affirm.

Evidence adduced at trial indicated that Charles Oropallo first made sexual advances toward his stepdaughter when she was ten years old and began having sexual intercourse with her following her twelfth birthday. The victim did not tell anyone what was going on because she was afraid no one would believe her. On one occasion when the victim was fourteen years of age, she refused the defendant's demands. The defendant hit her on the side of the head and her

head struck a bedpost. According to the victim, the defendant "told [her] if [she] had told anything about what was going on, that he would kill [her] and him[self] because he didn't want to go to jail." The victim testified that she was afraid of Oropallo and that she believed he was serious about committing suicide because she knew of two previous suicide attempts by him.

In November 1982, when she was seventeen, the victim became pregnant by the defendant. At the time, she told her mother she "had gotten drunk and that [the father] was somebody that [she] really didn't know." Oropallo continued to demand sex from his stepdaughter until she was eight months pregnant and then again after her baby was born in August 1983. The victim testified that she acceded because she feared he would harm her or her child. In January 1984, the victim finally informed her mother, Barbara Oropallo, that the defendant was the father of her child. The defendant was subsequently arrested and indicted for incest in connection with the November 1982 incident and for aggravated felonious sexual assault for two incidents in December of 1983 that the victim was able to pinpoint.

At trial, the State called Barbara Oropallo as a witness. She testified at length about the relationship between the defendant and his stepdaughter over the years. In addition, she testified about a series of events leading up to the defendant's becoming disabled. The defendant was hospitalized for carbon monoxide poisoning in February 1983 and for memory loss some time later. Barbara Oropallo stated that doctors had recommended drug therapy for her husband on the theory that he was mentally "trying to block" something. After the victim's baby was born in August of 1983, the defendant was admitted to the psychiatric floor of a hospital, apparently for the previously recommended drug therapy. While there, he "ripped a hospital bed apart" and subsequently was transferred to a psychiatric hospital, where he accidentally injured his back.

During this testimony, the defendant's sole objection was addressed to the witness's knowledge of the occurrence involving the hospital bed. The court ascertained that the witness was speaking from her own knowledge and adjourned for the day at the conclusion of the line of questioning. The following morning, defense counsel moved for a mistrial and in the alternative moved to strike Barbara Oropallo's testimony on the ground that it was inadmissible character evidence. The court denied the motions, finding that the probative value of the evidence outweighed its prejudicial effect.

■■ The State contends that the defendant's objection was untimely. We disagree. Contemporaneous objections are required so

that the trial court has an opportunity to consider whether to take remedial action. *State v. LaBranche*, 118 N.H. 176, 179, 385 A.2d 108, 110 (1978). In ruling on the merits of the motions, the court implicitly determined that remedial action could still be taken at that time. Therefore, we find that the defendant's motions preserved for review the issue of the admissibility of the testimony.

■ According to the State, Barbara Oropallo's testimony was relevant to establish that her husband became disabled (due to his back injury) after the alleged criminal acts and to corroborate the victim's testimony that she feared the defendant. Although evidence of violent episodes or psychiatric problems has the potential to taint the jury's perception of the defendant's guilt, "[t]here [was] nothing to show that the evidence was admitted to show bad character or a tendency to commit the crime or for any general persuasive bearing." *State v. Wargo*, 83 N.H. 532, 533, 145 A. 456, 457 (1929); *cf. State v. Desilets*, 96 N.H. 245, 73 A.2d 800 (1950). The State was required to prove that the defendant coerced the victim to submit to sexual intercourse. Barbara Oropallo's testimony was probative of the defendant's ability to have sexual intercourse and corroborated the victim's testimony concerning the threat of physical force, violence and retaliation. We therefore uphold the court's finding that the probative value of this evidence outweighed its prejudical effect. *See State v. Lurvey*, 127 N.H. 822, 508 A.2d 1074 (1986).

We turn to the defendant's second argument on appeal. During trial, the State called a witness to establish that human leukocyte antigen (HLA) testing had not excluded Charles Oropallo as the father of the victim's daughter. Both an original and a corrected HLA testing report were admited into evidence because the original report contained an error in the "paternity index" (PI). The PI indicates the probability that the tested male is the father of the child, compared to any other man. A clerical error was made in the calculation of the overall PI from individual PI values relating to each antigen group tested. The second report was identical but for the corrected overall paternity index figure. The defendant attempted to call Joann Dalton as an expert witness to testify that, in her opinion, the clerical error required new blood samples to be drawn and the testing procedures repeated. The defendant's second claim of error is the court's refusal to qualify Ms. Dalton as an expert.

■■ The admissibility of expert opinion evidence turns on whether the witness's knowledge of the subject matter of her testimony is sufficiently superior to the knowledge of persons in general as to make her views of value to the trier of fact. *State v. Berry*, 124 N.H. 203, 208, 470 A.2d 881, 884 (1983). A trial judge has broad

discretion to admit or exclude opinion evidence, and we will uphold the court's ruling absent an abuse of discretion. *See id.*

■■ The defendant contends that Ms. Dalton was qualified to testify as an expert on correct procedures and standards for filling out forms in laboratory blood testing. Ms. Dalton, a former blood technologist and head of the nuclear medicine department at St. Joseph's Hospital in Nashua, indicated that although she was unfamiliar with HLA testing, she would testify that the results offered in evidence were not valid. The court refused to qualify Ms. Dalton as an expert witness because of her lack of particular knowledge of HLA testing procedures. We cannot say that this ruling was an abuse of the court's discretion. Laboratory and paperwork quality control may be the subject of expert testimony. Nonetheless, the witness, who was unfamiliar with the specifics of HLA testing, was unlikely to assist the jury in assessing the significance of the clerical error. Moreover, the fact that each blood sample was tested twice and produced the same results suggests that the underlying results were valid despite the later clerical error. We therefore find no reversible error in the trial court's action in this case. *See* N.H. R. Ev. 103(b).

*Affirmed.*

All concurred.